# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> LOCAL 108, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, <br><br> Defendant. | Case No. 8:21-CV-1976-TPB-JSS |

## DECLARATION OF TRACY L. SHANKER

I, Tracy L. Shanker, am the Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor ("Department"). The Department supervised an election of officers of the International Brotherhood of Electrical Workers, Local 108 ("IBEW Local 108"), which was held on March 5, 2022, pursuant to a Stipulation of Settlement and Order entered December 21, 2021, by the Court ("the supervised election").

OLMS received four pre-election protests and one post-election protest, which it investigated and resolved prior to certifying the supervised election, as described below. The supervised election included new elections for the positions of President, Business Manager/Financial Secretary, and three Convention Delegates.

A. **Election Process**

On January 21, 2022, OLMS held a pre-election conference to establish the supervised election rules. All interested parties were invited to attend, including union officers, election committee members, and candidates. Following the meeting, the election committee was selected on January 25, 2022. On January 27, 2022, the combined notice of nominations/election was mailed to all members. The combined nomination and election notice was also emailed to Local 108 union stewards to post at unit worksites. It was also posted on the IBEW Local 108 website. The combined notice included information on how to request an absentee ballot (listed February 28, 2022 as the deadline to request one) and noted the March 5, 2022 tally date.

Between February 1, 2022, and February 10, 2022, IBEW Local 108 Election Judge Samuel Bump checked the Oldsmar Post Office Box five times. He retrieved fourteen combined notices returned as undeliverable and two nomination acceptance letters. Election Judge Bump and IBEW Local 108 Office Manager Jennifer Parra worked together to update addresses for the returned undeliverable notices and remailed them.

On February 10, 2022, Local 108 held the nominations meeting at 6:00p.m. at the IBEW Local 108 union hall. OLMS Election Supervisor Joel Belinc-DeGregorio supervised the nominations meeting. OLMS Election Supervisor Belinc-DeGregorio and Local 108 Office Manager Jennifer Parra reviewed the membership list and determined that all nominated candidates were in good standing.

On February 14, 2022, a candidate meeting was held to discuss the election rules, including campaigning, inspection of the mailing list, distribution of campaign literature, and observers.[1] At the candidate meeting, candidate Robert Adamcek advised of his preferred name for the ballot and

---

[1] Run-off election notices and parking lot campaign rules were mailed on February 11, 2022.

2

all candidates agreed for him to use his known name of "Bobby Adamcek" on the ballot. Immediately following the meeting, the election rules were emailed and mailed to all eleven candidates, interested parties, IBEW Local 108 Election Judge Bump, and IBEW Attorney Robert D. Kurnick. On the same day, IBEW Local 108 Office Manager Parra advised that Local 108 could send five delegates to the convention. By virtue of their office, the President and Business Manager/Financial Secretary were automatically delegates, leaving three remaining delegate positions open for election.

On February 16, 2022, the official ballot was approved and printed. Every ballot was stamped with the acronym "OLMS" in blue ink.

From February 1, 2022, through February 28, 2002, the P.O. Box in Oldsmar, Florida was checked nine times for absentee ballot requests. On February 17, 2022, the absentee ballot instructions were approved, and the election officials began mailing absentee ballot packages to members who had requested them. In total, 84 absentee ballot requests were received and mailed.

On March 5, 2022, from 7:00a.m. until 7:00p.m., IBEW Local 108 conducted a supervised election of officers at the Local 108 Union Hall, located at 10108 U.S. Highway 92 East, Tampa, FL 33610. During the day, at 2:00p.m., Election Judge Bump, OLMS Supervisory Investigator Robert Dillow, and OLMS Investigator Papineau traveled to the Mango P.O. Box designated for voted absentee ballots, located in Mango, Florida, and collected 39 absentee ballot kits and one orange undelivered certified mail postal ticket. They stored those items inside a sealed medium cardboard box until 7:00p.m., when the polls closed, and opened the box in the presence of the election committee members, judge, and observers inside the ballot tally area.

Upon inspection of the 39 returned absentee ballot kits, OLMS noted that 35 ballot return envelopes displayed the name and address of the voting member and 4 lacked any information

identifying the member. The envelopes were compared to the regular membership list, newly initiated members list, and honorary withdrawal members list. The 35 ballots were opened, and the secret ballot envelopes were separated. The sole orange undelivered certified ticket was compared to the delivered certified mail envelope and that member was identified. The 4 ballot packages with outer envelopes lacking any information identifying the member were set aside as challenged ballots.

After the polling site closed and the 35 absentee ballots were added to polling site votes, Local 108 counted 437 total votes. The complete results were as follows:

| Office | Candidate | Votes | Margin |
|---|---|---|---|
| President | **Sladky*** | 289 | 145 |
| | Fountain | 144 | |
| Business Manager/Financial Secretary | **Parsels** | 310 | 183 |
| | Bowden | 127 | |
| Delegates (3) | **Carlisle** | 304 | 108 |
| | **Trice** | 298 | |
| | **Bailey** | 253 | |
| | Adamcek | 145 | |
| | Garland | 104 | |

\* **Bolded** name denotes winner.

Local 108 posted the election results at the union hall and announced the results at the immediately after all ballots were counted. The winning candidates were installed on April 14, 2022, in accordance with the general rules established at the pre-election conference.

B. Election Protests

4

Election Supervisor Belinc-DeGregorio received four pre-election protests and one post-election protest with thirteen allegations.[2]

**First Informal Pre-Election Protest**: On February 21, 2022, union member Michael Jones emailed Election Supervisor Belinc-DeGregorio inquiring about the ban on campaigning or loitering in the union parking lot on the date of the election. On March 3, 2022, he contacted Election Supervisor Belinc-DeGregorio stating that the membership should have voted on campaigning in the parking lot and that he did not agree with the rule but would abide.

**Response**: Section 401(c) of the LMRDA provides that "adequate safeguards to insure a fair election shall be provided . . . ." 29 U.S.C. § 481(c). The Department's investigation revealed that on January 27, 2022, IBEW Attorney Kurnick had inquired about the fact that the notice did not mention prohibiting gatherings in the local union's parking lot during the election. Attorney Kurnick and Election Supervisor Belinc-DeGregorio agreed that the notice should include that prohibition to keep candidates from campaigning at or near the polling site. This prohibition was implemented to avoid a potential adequate safeguards violation. Therefore, the Department determined that there was no violation of the LMRDA.

**Second Informal Pre-Election Protest**: On February 25, 2022, delegate candidate Bruce Bailey emailed Election Supervisor Belinc-DeGregorio photos of incumbent candidate Financial Secretary/Business Manager Doug Bowden's campaign literature in the breakroom and inquired about whether candidates were allowed to post campaign materials on the union board.

**Response**: Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio advised that

---

[2] The formal protests addressed below were made by incumbent Financial Secretary/Business Manager candidate Steven Fountain. He also made the same protests informally prior to the March 5, 2022 election. Because the allegations in Fountain's post-election complaint restates his informal protests prior to the election, this declaration addresses the allegations included in the formal complaint received by OLMS.

5

posting on the union bulletin board was permissible and provided Bailey with information about campaigning on company time or property. There was no evidence that the campaign materials were posted on company or union time. Additionally, there was no rule against campaigning in the breakrooms. Accordingly, the Department determined that there was no violation of the LMRDA.

**Third Informal Pre-Election Protest**: On February 28, 2022, Election Supervisor Belinc-DeGregorio received two calls from members alleging that on that day, incumbent presidential candidate Steve Fountain campaigned inside the breakroom of TECO Big Ben power plant while on union time.

**Response**: Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits union resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation that Fountain campaigned while on union time. The investigation revealed that Fountain was at the TECO Big Ben power plant conducting union business related to structural damage and safety concerns. Although he walked around with a stack of papers in his hand, the papers were not campaign literature; rather, they were documents related to the plant's structural damages. Election Supervisor Belinc-DeGregorio was unable to substantiate that Fountain had placed campaign literature on tables in the breakroom of the TECO Big Ben power plant while on union time. Furthermore, even if unlawful campaigning occurred on Fountain's behalf, the violation would be moot because he lost the race for President by 145 votes. Accordingly, the Department determined that no violation of the LMRDA occurred.

**Fourth Informal Pre-Election Protest**: On February 28, 2022, Election Supervisor Belinc-DeGregorio received a call from member Eddie Kline alleging that on that day, he observed union member Archie Cliatt posting Fountain's campaign literature inside the breakroom of TECO

6

Big Ben power plant while on employer time.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated this allegation. He spoke with Cliatt and was unable to substantiate that Cliatt was on employer time. Cliatt stated that he was on break (personal time) when he posted Fountain's campaign literature in the breakroom of the TECO Big Ben power plant at approximately 12:30p.m. Furthermore, even if unlawful campaigning occurred on Fountain's behalf, the violation would be moot because he lost the race for President by 145 votes. Accordingly, the investigation did not uncover a violation that may have affected the outcome of the supervised election.

**First Formal Protest:** On January 18, 2022, Election Supervisor Belinc-DeGregorio received a call from incumbent Financial Secretary/Business Manager candidate Steven Fountain alleging that Chris Parsels was at the TECO Central Service company campaigning on employer time.

**Response**: Section 401(g) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 481(g), provides in pertinent part that "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of" the LMRDA. The Department's interpretive regulations provide that "campaigning by union stewards on company time with the approval of the employer would violate section 401(g) . . . ." 29 C.F.R. § 452.78; *see also Solis v. United Steelworkers Local 9477*, 798 F. Supp. 2d 701, 704 (D. Md. 2011) ("*any* use of employer resources to promote a candidate's campaign is prohibited") (emphasis in original).

Election Supervisor Belinc-DeGregorio investigated the allegation that Parsels

7

campaigned while on duty. A review of Parsels' earnings and leave statement confirmed that he was not on employer time on January 18, 2022. However, during the investigation, Parsels admitted that he campaigned to union members while they were working on employer time at the West Service Area and Central Service sites, which constitutes a violation of the LMRDA. The investigation determined that Parsels campaigned to approximately 45 members (30 members at the West Services Area and approximately 15 members at the Central Service site). Therefore, the Department concluded that any violation of the LMRDA that occurred did not affect the outcome of the supervised election because the closest margin of victory for any office was 108 votes.

**Second Formal Protest**: On January 18, 2022, incumbent candidate Fountain alleged that Parsels used employer resources when he was driven around by a union member using the TECO Central Service golf cart for transportation.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation and attempted to speak with witnesses. Election Supervisor Belinc-DeGregorio spoke with union member William McGain, who denied transporting Parsels around any worksites in a golf cart, forklift, or pickup truck. Additionally, McGain claimed that the golf cart had not been operational for over nine months. Election Supervisor Belinc-DeGregorio attempted to speak with union member Marvin Knight, who Fountain and incumbent President candidate Bowden identified as a witness to this allegation. However, Knight did not provide any information to Election Supervisor Belinc-DeGregorio, despite Belinc-DeGregorio's attempts. Thus, Election Supervisor Belinc-DeGregorio was unable to substantiate that a campaign violation occurred. Election Supervisor Belinc-DeGregorio cautioned all parties against inappropriate campaigning. Accordingly, the Department concluded that no violation of the

LMRDA occurred.

**Third Formal Protest**: On March 11, 2022, Fountain alleged that Delegate candidate Troy Trice campaigned on employer time at the TECO Big Ben power plant but was not sure when this occurred.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation and determined that from February 14 through February 16, 2022, Trice visited the breakrooms at the dockyard, powerplant West End, and the tool shops, during his lunch break. Candidates and members were allowed to post campaign materials in breakrooms while not on company or union time. There was no evidence that the campaign materials were posted on company or union time. Accordingly, the Department concluded that there was no violation of the LMRDA.

**Fourth Formal Protest**: On March 11, 2022, Fountain alleged that President candidate Michael Sladky campaigned on employer time but did not disclose when or where this occurred.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation and, as stated above, was unable to speak with union member Knight. Election Supervisor Belinc-DeGregorio was able to speak with Sladky, who denied campaigning at any of the company properties or at the union hall. Instead, Sladky made a campaign mailing with candidates Parsels and Trice. Accordingly, the Department was unable to substantiate that a campaign violation occurred.

**Fifth Formal Protest**: Fountain alleged that on February 28, 2022, an unidentified person at the CLARIOS company parking lot had placed Parsels' campaign flyers on every vehicle inside

9

the locked company parking lot.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation and discovered that union member Jennifer Betancourt had placed flyers on the cars in the parking lot without Parsels' knowledge. Although Election Supervisor Belinc-DeGregorio had previously advised that it was acceptable for candidates to campaign at open surface parking lots that were accessible to any union member, parking lots that were inaccessible to all union members – such as CLARIOS – were not acceptable. During the investigation, Election Supervisor Belinc-DeGregorio determined that Betancourt campaigned to 50 members by placing Business Manager/Financial Secretary candidate Parsels' flyers on cars parked at the CLARIOS parking lot. The investigation showed that Betancourt made 50 copies of Parsels' campaign flyer. Thus, any violation of the LMRDA that occurred did not affect the outcome of the supervised election because the closest margins of victory were 145 and 183 votes (for the President and Business Manager/Financial Secretary races, respectively). Additionally, to mitigate any potential violation, Election Supervisor Belinc-DeGregorio offered Bowden and Fountain the opportunity to similarly campaign at the CLARIOS parking lot; they declined to do so. Therefore, the Department concluded that there was no violation of the LMRDA that may have affected the outcome of the supervised election.

**Sixth Formal Protest**: Incumbent Financial Secretary/Business Manager candidate Fountain alleged that in February 2022, Parsels received a call list from employer Tampa Electric that he used to campaign to members, however the list was not provided to Fountain or incumbent President candidate Bowden.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g),

10

prohibits employer resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation. The investigation revealed that Delegate candidate Trice went to different worksites to take photos of the overtime lists and provided the photos to Parsels. Parsels cross-referenced the employees' names with two different Local 108 lists that were available to candidates from the September 2020 election and the supervised March 2022 election. Once Parsels identified the name on the overtime list as a member, he would enter the information into a spreadsheet that he uploaded into an application, which he used to send mass campaign text messages. There was no evidence that any employer provided any candidate with a call list. Accordingly, the Department found that there was no violation of the LMRDA.

**Seventh Formal Protest**: Incumbent candidate Fountain alleged that on approximately February 23, 2022, President candidate Sladky criticized Fountain in a campaign letter.

**Response**: The LMRDA does not regulate the content of campaign literature and a union may not regulate the content of campaign literature that candidates wish to have distributed. The Department's interpretive regulations provide that a union may not censor the statements of candidates in any way, even though a statement may include derogatory remarks about another candidate. 29 C.F.R. § 452.70. Thus, the Department concluded that there was no violation of the LMRDA.

**Eighth Formal Protest**: Incumbent candidate Fountain alleged that union members requested absentee ballots and never received them.

**Response**: Section 401(e) of the LMRDA states that "every member in good standing . . . shall have the right to vote for . . . the candidate or candidates of [their] choice." 29 U.S.C. § 481(e). Section 401(c) of the LMRDA also provides that "adequate safeguards to insure a fair election shall be provided . . . ." 29 U.S.C. § 481(c). During the investigation, Fountain claimed

that Assistant Business Manager Robert Thomas received complaints from members who said they had not received their requested absentee ballot. However, when interviewed, Thomas did not have any names or phone numbers to provide. Instead, Thomas stated that he received a call from Local 108, Sumter Electric Company (SECO) Committee Chairman Doug Stanley about members who had not received their requested absentee ballots. On March 23, 2022, Stanley provided three of the possible five members' names who he claims did not receive absentee ballots: Brady Jackson, Pete Strickland, and Frank Ray. Election Supervisor Belinc-DeGregorio asked Stanley to provide the members' contact information; however, Stanley never provided the requested contact information. Based on the union's absentee ballot request log, the union received and promptly responded to the absentee ballot requests from Jackson, Strickland, and Ray. However, they did not vote in the election. Election Supervisor Belinc-DeGregorio reviewed the contents of both P.O. Boxes and confirmed that the three members' absentee ballots were not returned to the P.O. Boxes. The investigation further showed that member Frank Ray claimed to have received three absentee ballots packages with varying versions of his name. However, the records confirmed that Election Judge Bump sent only one absentee ballot package to Ray, which he received.

The Department's investigation further revealed that the combined nominations/election notice included information on how to request an absentee ballot and noted the deadline to do so was February 28, 2022. Between February 1, 2022, and February 28, 2022, IBEW Local 108 Election Judge Samuel Bump collected, processed, and mailed absentee ballot kits to members within 24 to 48 hours of receiving the request. In addition, Election Supervisor Belinc-DeGregorio also sent absentee ballot kits to eligible members who requested one. The union received and processed 84 absentee ballot requests. Of the 84 absentee ballot requests, 39 absentee ballots were

returned to the union by the day of the election—March 5, 2022. The union received only one undelivered absentee ballot and identified that member. As noted above, member Frank Ray claimed that he received three absentee ballot kits with different versions of his name. However, the Department's investigation did not reveal evidence to support this claim, and Ray did not provide the extra absentee ballots that he did not use to vote. Accordingly, the Department determined that there was no violation of the LMRDA.

**Ninth Formal Protest**: Incumbent candidate Fountain alleged that union members received absentee ballots a day or two before the election, denying eligible members the right to vote.

**Response**: As discussed above, Section 401(e), 29 U.S.C. § 481(e), entitles every member in good standing the right to one vote and Section 401(c), 29 U.S.C. § 481(c), requires that adequate safeguards be provided to ensure a fair election. The Department's investigation disclosed that Election Judge Bump heard that approximately four members had received their ballots close to the date of the election. Member Daniel Jones contacted President candidate Parsels stating that he received his absentee ballot on or around March 1, 2022. However, as stated above, the record showed that absentee ballots requests were processed and then mailed within 48 hours of the request. Specifically, Jones' absentee mail ballot kit had been mailed no later than February 24, 2022, to the address he provided. Additionally, members had the opportunity to request an absentee ballot as early as February 1, 2022. A member's delayed absentee ballot request that results in the ballot arriving too late to be submitted by the deadline does not constitute a violation of the LMRDA. Further, all members were entitled to vote in-person at the polling place. Accordingly, the Department found that there was no violation.

**Tenth Formal Protest**: Incumbent candidate Fountain alleged that members' voted

13

absentee ballots were returned to them and members did not know who to contact for questions.

**Response**: As discussed above, section 401(e) entitles every member in good standing the right to one vote and section 401(c) requires that adequate safeguards be provided to ensure a fair election. Election Supervisor Belinc-DeGregorio investigated the allegation. During the investigation, Delegate candidate Tim Garland claimed that he mailed his absentee ballot on February 28, but received a yellow return to sender sticker dated March 5, 2022; the sticker noted, "Box Closed." Similarly, member Dylan Coldings' absentee ballot was returned to his home address with a yellow sticker indicating "Box Closed." However, the investigation showed that the combined nominations/election notice clearly stated that "[i]n order to be counted, absentee ballots must be received at the post office box, which was rented for this supervised election, **no later than 11:30a.m. EST on Saturday, March 5, 2022.**" (emphasis in original). Pursuant to the election notice, Election Judge Bump, OLMS Supervisory Investigator Robert Dillow, and OLMS Investigator Papineau traveled to the Mango P.O. Box and collected all ballots in the P.O. Box on March 5, 2022, at 2p.m. Thus, any member's delay in mailing their voted absentee ballot, does not constitute a violation of the LMRDA. Furthermore, the combined nominations/election notice listed Election Supervisor Belinc-DeGregorio and Election Judge Bump as the individuals handling the absentee ballots and included their contact information. Thus, members were provided requisite information on who to contact for questions. Therefore, the Department determined that there was no violation of the LMRDA.

**Eleventh Formal Protest**: Incumbent candidate Fountain claimed that the Stipulation of Settlement and Order issued by U.S. District Court Judge Barber ordered that requests for absentee ballots must be done in three ways: by calling either Election Judge Bump, Election or Supervisor Belinc-DeGregorio, or by using a link. Specifically, Fountain claimed that members who had

written in and requested absentee ballots should not have been able to do so because that method was not established by the Order.

**Response**: The Settlement and Order referenced in this protest states, that the "supervised election shall be conducted in accordance with Title IV of the Act, 29 U.S.C. § 481-483, and, insofar as lawful and practicable, in accordance with the Local Union's Constitution and Bylaws, and the decisions of the Secretary with regard thereto shall be final, subject to review by the Court…." Nowhere in the Settlement Order does it prescribe the methods in which absentee ballots may be requested. Moreover, the supervised election provided several options for members to request absentee ballots – including calling Election Judge Bump or Supervisor Belinc-DeGregorio, submitting a written request to Election Judge Bump or Supervisor Belinc-DeGregorio, or using the email address provided in the election notice – to allow for the maximum amount of participation. Accordingly, the Department determined that there was no violation of the LMRDA.

**Twelfth Formal Protest**: Incumbent candidate Fountain alleged that Parsels campaigned on January 25, 2022, during the TECO unit monthly meeting for PRECO.

**Response**: As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits union resources from promoting any candidacy. Election Supervisor Belinc-DeGregorio investigated the allegation. The investigation revealed that at the TECO unit monthly meeting for PRECO, a member asked candidate Parsels if he was going to run for office, and Parsels responded, "yes." There was no evidence that Parsels campaigned during the meeting. The Department concluded that there was no violation of the LMRDA.

**Thirteenth Formal Protest**: Incumbent candidate Fountain alleged that Parsels was allowed to post documents filed by the Department of Labor in the underlying court case on union

15

bulletin boards, but Fountain and Bowden were told that they were not allowed to post documents from the IBEW Local 108's attorney on the same board.

**Response**: Section 401(c) of the LMRDA requires unions to provide adequate safeguards to ensure a fair election. The adequate safeguards provision encompasses a prohibition against disparate candidate treatment. *See* 29 C.F.R. § 452.110. The Department's investigation revealed that on February 17, 2022, as part of his campaign, Parsels posted the Department's August 17, 2021, complaint instituting the underlying the civil lawsuit challenging the September 2020 election. The complaint was a public document that he obtained from Public Access to Court Electronic Records (PACER). That same day, Bowden was advised by the Department that he could not post an April 12, 2021, letter from the union's law firm, Sherman Dunn, P.C. At the time, the Department viewed the Sherman Dunn letter as a privileged document from the local's attorney addressed to Bowden and Fountain in their official capacity as officers. On February 28, 2022, Sherman Dunn attorney Robert Kurnick, who represented IBEW Local 108, advised that the letter was included as an exhibit to one of Local 108's pleadings in the underlying civil lawsuit pertaining to the September 2022 election. Upon learning that this particular document was also available on PACER, Election Supervisor Belinc-DeGregorio immediately allowed Bowden to post the letter. Bowden posted the Sherman Dunn letter on his Facebook campaign page prior to the election. Even if Bowden should have been allowed to post the Sherman Dunn letter when he made his initial request, the fact that Election Supervisor Belinc-DeGregorio immediately remedied the oversight negates any violation. Additionally, Bowden and Fountain fully campaigned throughout the election period, in part, by posting other materials to the union bulletin boards. Accordingly, the Department concluded that there was no violation that may have affected the outcome of the election.

**Conclusion**

The Department has concluded from its investigation of these election protests that the IBEW Local 108 election of officers, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with IBEW Local 108's constitution and bylaws. Therefore, the results of this supervised election should be certified by the Court.

Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 482(c)), and the authority delegated to me,

IT IS HEREBY CERTIFIED that the following named candidates have been duly elected to the offices designated:

| | |
|---|---|
| Michael Sladky | President |
| Chris Parsels | Business Manager/Financial Secretary |
| Justin Carlisle | Convention Delegate |
| Troy Trice | Convention Delegate |
| Bruce Bailey | Convention Delegate |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th of June 2022, in the City of Washington, District of Columbia.

*[signature: Tracy L. Shanker]*

Tracy L. Shanker, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor